UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| GLENDRICK GARDNER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. |
| | ) | 5:20-cv-456-JMH |
| V. | ) | |
| | ) | |
| RUSSELL SCOTT, *et al.*, | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendants. | ) | **AND ORDER** |

**** **** **** ****

Proceeding without a lawyer, Plaintiff Glendrick Gardner previously filed a civil complaint pursuant to 42 U.S.C. § 1983 alleging claims against individuals employed by Gardner's former employer, the Lexington (Ky.)-Fayette Urban County Government ("LFUCG") in their respective "official" capacities related to the handling of Gardner's workers' compensation claims after he suffered two work-related injuries.[1]

However, while Gardner's complaint states that the basis for this Court's jurisdiction is his belief that the Defendants violated his Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights, [R. 1, at 4], his complaint alleges no facts even

---

[1] Gardner's complaint identifies the Defendants as Russell Scott (Formerly the AM Ops Manager, Program Manager), Jeremy Hobbs (Formerly HR), Williams Jones (LFUCG Yard Waste Supervisor), and Willie Kay Lewis (Formerly Program Manager Sr.). [R. 1].

1

suggesting a constitutional claim. Instead, the factual allegations of his complaint clearly relate to two work-related injuries suffered by Gardner, his medical treatment for those injuries, and his workers' compensation claims related to those injuries. In addition, Gardner's complaint requests that this Court "review actual paperwork" (referring to information provided to his employer, the risk management department, his employers' insurance company, and a workers' compensation Administrative Law Judge ("ALJ"), as well as various medical and employment records) and "determine the severity of my condition." [R. 1, at 14]. As relief, he requests a finding that LFUCG (Waste Management) be held liable to him for the injuries that he suffered while working on the garbage truck and seeks $12 million for his injuries plus $5 million in punitive damages. [R. 1, at 16].

Thus, notwithstanding Gardner's fleeting references to his constitutional rights, it is clear that Gardner's complaint concerns his dissatisfaction with the resolution of his prior workers' compensation claims against his employer. Essentially, Gardner asks this Court to review the evidence presented to the ALJ and makes its own findings as to the liability of the LFUCG to Gardner with respect to his work-related injuries.

The problem with Gardner's wish to pursue his claims in this Court is that this Court does not have jurisdiction over such

claims. Rather, as this Court previously explained, the Kentucky's Workers' Compensation Act provides the exclusive remedy for work-related injuries. *See* K.R.S. § 342.690(1)(" If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee…on account of such injury or death."). The effect of this statute is to "shield a covered employer and its insurance from any other liability to a covered employee for damages arising out of a work-related injury." *Kentucky Employers Mut. Ins. V. Coleman*, 236 S.W.3d 9, 13 (Ky. 2007) (citing *Travelers Indemnity Co. v. Reker*, 100 S.W.3d 756, 760 (Ky. 2003)). "This immunity is extensive, ranging from disputes over the payment for injuries of the employee . . . to allegations of tortious conduct related to dealing with the workers' compensation claim itself." *Id.* at 13-14; s*ee also Zurich Ins. Co. v. Mitchell*, 712 S.W.2d 340, 341 (Ky. 1986) ("[T]he Workers' Compensation Act provides an exclusive remedy and consequently bars an employee's tort action for separate damages due to the untimely payment of benefits."). As the Kentucky Supreme Court explained in *Coleman*, because any damages from wrongful acts related to the handling of an employee's workers' compensation claim "must be remedied through the administrative procedures established under the Act . . . [i]t is consequently inescapable

3

that the circuit court has no jurisdiction to handle" such claims. *Coleman*, 236 S.W. 3d at 14.

Accordingly, and in light of this Court's omnipresent duty to consider its subject matter jurisdiction, the Court entered a Show Cause Order directing Gardner to show cause in writing why his complaint should not be dismissed for lack of jurisdiction. [R. 5]. While Gardner has now filed a response to the Court's Order, [R. 6], Gardner's response only confirms that he seeks this Court's review of the ALJ's denial of his workers' compensation claims. Thus, this Court does not have jurisdiction over this matter. In his response, he states as follows:

> From the time I was awarded benefits from the Division of Unemployment Insurance Appeals Branch held my employer reliable for my work injuries. State Courts regardless of the facts isn't going to rule in my favor. (Hon. Joseph Hood) first I'm going to present the facts, briefs, motions, role the plaintiffs/defendants attorney played and the evidence the ALJ's used to reach their decisions. Then the evidence should get a clearer picture of how unjust the state judicial system has been and how I been denied my rights as a United States Citizen.

[R. 6, at 1-2].

Gardner then attaches a series of documents, pleadings, and orders related to the payment of his unemployment benefits, the administrative adjudication of his workers' compensation claims by the Kentucky Labor Cabinet Department of Workers' Claims, Gardner's unsuccessful attempt to pursue his workers' compensation

claims in a civil lawsuit against the same Defendants named in his complaint here in the Fayette County Circuit Court, and Gardner's unsuccessful attempt to file a complaint against the ALJ who denied his workers' compensation claim. [R. 6-1]. However, none of these documents establish this Court's jurisdiction over Gardner's claims alleged in his complaint. Indeed, if anything, his submission of this documentation to this Court only confirms that what Gardner actually seeks is for this Court to review the ALJ's denial of his workers' compensation claims, which this Court has no authority to do.

Gardner also submits documentation related to the denial of his claim for Social Security and Supplemental Security Income ("SSI") disability benefits by the Social Security Administration. [R. 6-1]. However, the relevance of the denial of his SSI claim to the claims alleged in his complaint is unclear, as Gardner's complaint alleges claims against individuals employed by his former employer related to his workers' compensation claims. It does not purport to be an appeal of an unfavorable Social Security Administration decision.[2] Nor did his employer appear to play any role in the resolution of his SSI claim.

---

[2] To the extent that Gardner wishes to appeal the Social Security Administration's denial of his claim, he is directed to refer to the instructions in the February 18, 2020 Notice of Decision sent to him by the Social Security Administration. [R. 6-1, at 88].

Gardner's response does attempt to further explain the basis of his constitutional claims, which he claims provide this Court with jurisdiction over his complaint. [R. 6, at 11-13]. However, Gardner's explanation amounts to little more than a recitation of the rights that he believes are guaranteed him by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments with no explanation of how those rights have been violated by any of the Defendants. For example, he states that the "Fifth Amendment states that I Glendrick Gardner shouldn't be deprived of life, liberty or property without due process of the [sic]. Its proof the Defendants admitted guilt." [*Id.* at 12]. Similarly, he states that the "Eighth Amendment in a nutshell, the cruel and unusual punishment clause measures a particular punishment against society's prohibition against Inhuman treatment. It prevents the government from imposing a penalty that is either barbaric or far too severe. It allows the Plaintiff to sue LFUCG and the Defendants." [*Id.* at 13].

However, while Gardner's pleadings are evaluated under a more lenient standard because he is not represented by an attorney, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), neither Gardner's

---

(instructing Gardner that a written appeal must be submitted to the Appeals Council at the provided address within 60 days of the date Gardner received the Notice, unless he is able to show he had a good reason for not filing it on time)]

complaint nor his response set forth any facts sufficient to support a claim for violation of his constitutional rights. In both his complaint and his response, Gardner provides only conclusory claims that Defendants violated his constitutional rights, with no factual allegations to support these conclusions at all. While "the pleading standard Rule 8 announces does not require detailed factual allegations . . . it demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."). Thus, vague allegations that one or more of the defendants acted wrongfully or violated the plaintiff's constitutional rights are not sufficient. *Laster v. Pramstaller*, No. 08-CV-10898, 2008 WL 1901250, at *2 (E.D. Mich. April 25, 2008).

Even evaluating both Gardner's complaint and his additional explanation of the basis for his constitutional claims in his response together, Gardner's allegations fall well below the requirements to state a plausible claim for relief. Thus, even if Gardner's claims against his employer were not improperly raised

in this Court in light of the exclusivity provision of Kentucky's Workers' Compensation statutory scheme, his woefully inadequately pled constitutional claims are insufficient to provide this Court with subject matter jurisdiction over this lawsuit.

For all of the reasons outlined above, Gardner's response to the Court's Show Cause Order does not demonstrate that this Court has subject matter jurisdiction over the claims alleged in his complaint. Thus, having previously provided notice to Gardner, [R. 5], this Court will dismiss Gardner's complaint *sua sponte* for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3).

Accordingly, it is **ORDERED** as follows:

(1) Gardner's complaint [R. 1] is **DISMISSED WITHOUT PREJUDICE;**

(2) Any pending request for relief is **DENIED AS MOOT;**

(3) **JUDGMENT** shall be entered contemporaneously with this Order; and

(4) This action is **STRICKEN** from the Court's docket.

This 4th day of January, 2021.



Signed By:
Joseph M. Hood
Senior U.S. District Judge